State v. Peacock.

---

THE STATE OF NEW JERSEY v. GEORGE H. PEACOCK.

1.  No person can be tried for a crime while so mentally deranged as not
    to be able to conduct his defence.   The mode of determining the exist-
    ence of this mental state may be by an inquiry by the trial court, or by
    a jury specially empaneled.   The trial court should not arrest the
    course of a trial for the purpose of entering upon such an inquiry upon
    a mere suggestion of defendant's counsel without any substantial evi-
    dence of the existence of insanity.

2.  When a defendant, upon bail, was present at the opening of the trial,
    but afterwards absented himself, evidence that his absence was the
    result of mental disorder was relevant, but a ruling of the court that
    insanity could not be shown, but the acts and conversation of the de-
    fendant about the time of his leaving, could be proved, was not injuri-
    ously erroneous.

3.  The trial of any indictment (except for a capital offence), commenced
    in the presence of a defendant, may be continued in his voluntary
    absence.

State v. Peacock.

This writ brings up a judgment of the Court of Quarter Sessions of Burlington county. The defendant, George H. Peacock, was indicted for an assault with intent to commit a rape, and the trial resulted in a verdict of guilty. The defendant, at the time of the beginning of the trial, was at large upon bail. He was present during the first day of the trial, but absent thereafter during its progress. The trial was conducted throughout by his attorneys, one of whom consented that the verdict should be taken in the absence of the defendant and his counsel. On the last day of the trial an offer was made by his counsel to prove, by a brother of the defendant, the insanity of the defendant at the time of his disappearance, to rebut the presumption that defendant's absence was from a sense of guilt. This offer the court overruled, but stated that they might prove, on behalf of the defendant, his acts and conversation, to show his excited state and condition at or about the time of his leaving.

Argued at June Term, 1887, before BEASLEY, CHIEF JUSTICE, and JUSTICES SCUDDER, DIXON and REED.

For the plaintiff in error, *Jacob C. Hendrickson* and *C. H. Bergen.*

For the defendant, *Charles E. Hendrickson,* prosecutor of the pleas, and *M. R. Sooy.*

The opinion of the court was delivered by

REED, J. In the argument addressed to the court the counsel presented three points as their grounds for reversal.

First. That defendant was shown to the court at a certain stage of the trial in an aspect that demanded a suspension of the trial till the question of his present sanity was settled.

Second. That the court erred in rejecting the offer of testimony to prove his then condition of insanity, which proof was relevant as a part of the case of the defence.

Third. That the trial could not proceed, nor the verdict be taken in the absence of the defendant.

It is undoubtedly the law that a person, who, by reason of insanity, is unable to comprehend his position, and of making his defence, cannot be placed upon trial for a crime. If the court, either before or during the progress of such a trial, either from observation or upon the suggestion of counsel, have facts brought to its attention which raises a doubt of the condition of defendant's mind in this respect, the question should be settled before another step is taken. The method of settling this preliminary question, where it is not the subject of statutory regulation, is within the discretion of the trial court. The court can itself enter upon the inquiry, or submit the question to another jury empaneled for that purpose. *Freeman* v. *People*, 4 *Denio* 9 ; *Bonds* v. *State*, *Mart. & Yerg.* 143 ; *Commonwealth* v. *Braley*, 1 *Mass.* 103.

Whether the action of the court is the subject of exception it is not now necessary to decide, for in the present case no objection was made to the action of the court in respect to a suspension of the proceedings, nor was there any request made by the counsel who defended him that such an inquiry should be instituted. There was nothing proved that displayed such a condition of mental derangement that the court, of its own motion, was called upon to direct a further inquiry into the matter. No court would be bound to stop, or justified in arresting the progress of a trial by a mere suggestion of, but in the absence of any substantial evidence of the existence of a degree of mental disorder which would unfit the defendant from conducting his cause or instructing his counsel. There is nothing in the first position taken that calls for further remark.

In respect to the second point, namely, that the proffer of evidence that the defendant was insane was overruled, I also think there was no injurious error. This offer was not made as a defence to the charge in the way of proving that the defendant was incapable of a criminal intent so far as concerned the commission of the act charged by reason of insanity existing at the time of the commission of the act. The ground upon which the testimony was relevant was that it went to

explain an act of the defendant, from which, if unexplained, hurtful inferences might be drawn.

Inasmuch as he was competent to go upon the stand in his own behalf, his absence (if it was voluntary) would give rise to conclusions that facts which he was at liberty to explain, and did not explain, he could not explain. Any reason why he could not be produced as a witness was relevant.

To prove that his absence was involuntary the offer was made. The court gave the defence the privilege of showing any act or declaration of the defendant bearing upon his mental condition. The restriction seemed to be against the introduction of expert testimony. Under the ruling of the court, several witnesses were examined as to the conduct of the defendant. So far as appears, all the evidence that was produceable was introduced.

While the opinions of the witnesses who detailed such facts as were within their knowledge were technically admissible by the weight of authority, yet, as the expression of opinion must be preceded by a statement of the facts upon which it is based, and as a juror is as capable of drawing a conclusion from the facts as a witness who is not an expert, I do not think the defendant was prejudiced by the restriction, as none of these witnesses were experts.

Nor was an offer of any expert testimony offered, and the course of the proceeding shows conclusively that none of importance was produceable.

The notion that the defendant was deranged was obviously of sudden origin, arising from the fact of the defendant's unaccountable absence. No opportunity for professional observation had been afforded, and any statement by any expert, upon the force of the facts detailed, that the defendant was insane, would be of no evidential importance whatever. There was no injurious error apparent upon this branch of the case.

It is, in the third point, insisted that the verdict was a nullity, because a part of the trial, and the rendering of the verdict, was in the absence of the defendant.

In civil suits the rule is settled that the absence of a party, voluntarily, does not affect the legality of the verdict.

In *Cooper et al.* v. *Morris*, 19 *Vroom* 607, it was held by the Court of Errors that in contemplation of law the parties and their counsel remain in court until a verdict has been rendered or the jury discharged.

In criminal prosecutions, the requirement of defendant's presence is dependent upon the grade of the crime or the character of the punishment. In the case of *State* v. *West*, 2 *Zab.* 212, it was held that where the sentence of the court inflicts any corporal punishment it is necessary that the prisoner should be present in person. The defendant was present when the judgment of imprisonment in the present cause was pronounced.

In respect to the necessity of the defendant's presence before and after judgment when action was taken, there exists elsewhere considerable contrariety of opinion.

In felonies, the rule in England was that no writ of error could be conducted in the absence of the defendant, but the practice is settled in this state that his presence is not essential. *State* v. *Donnelly*, 2 *Dutcher* 463, 471.

In felonies, in England, no verdict could be rendered in the absence of the defendant, but in the case of *State* v. *Jackson*, 20 *Vroom* 252, it was held that by a long course of procedure the practice has become settled in this state to receive the verdict of the jury in all criminal cases, except capital cases, without the presence of the accused.

The reasoning which led to the vindication of the legality of this practice applies, with equal force, to the effect of defendant's absence during the trial.

If a defendant, after the commencement of a trial in a criminal case, except a capital case, voluntarily absents himself from the place of trial, this places no legal obstacle in the way of a continuance of the trial in the usual way. As there was nothing to show that the defendant's acts were involuntary, he is not in a position to successfully complain.

The judgment is affirmed.