25425. SPELL v. THE STATE.

Argued September 9, 1969—Decided November 7, 1969.

*Gordon Knox, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Mathew Robins, Assistant Attorneys General,* for appellee.

Mobley, Presiding Justice. Kenneth Carol Spell appeals from his conviction of murder and sentence of life imprisonment, and from the denial of his motion for new trial, as amended.

■ The appellant enumerates as error the denial of his special

plea to the arraignment. This plea asserted that: He filed a special plea of insanity, and a jury trying the issue found against the plea. His motion for new trial is pending, and should be disposed of prior to his arraignment on the indictment.

In *Scoggins v. State,* 150 Ga. 72 (102 SE 520), this court held that an accused person had no right to direct review from a finding against his special plea of insanity. The present appellate practice law authorizes a review only of a final judgment, except as to specified orders and judgments (which do not include a judgment on a special plea of insanity), unless the trial judge certifies an order, decision, or judgment for immediate review. Ga. L. 1965, p. 18; Ga. L. 1968, pp. 1072, 1073 (*Code Ann.* § 6-701). The appellant does not contend that the trial judge has certified the judgment on the insanity plea for immediate review.

The appellant argues that under the present appellate practice procedure an appeal from the finding on the insanity plea acts as a supersedeas, since the notice of appeal in civil cases serves as a supersedeas (Ga. L. 1965, pp. 18, 22; *Code Ann.* § 6-1002), and this court in *Bacon v. State,* 222 Ga. 151, 153 (149 SE2d 111), held that the proceeding on a special plea of insanity is civil in nature. This argument overlooks the fact that the judgment in the insanity proceeding is not a judgment from which the appellant had a right of direct appeal unless the trial judge certified the judgment for immediate review.

The appellant relies on language in *Brown v. State,* 215 Ga. 784, 787 (113 SE2d 618), where this court held that the accused was entitled "to have such [insanity] plea disposed of legally before being arraigned on the indictment," to support his plea to the arraignment. The question made in the present case was not in the *Brown* case. In the *Brown* case the accused had been convicted of murder and he appealed from that conviction, also assigning error on the denial of his motion for new trial on his insanity plea. It was held that an erroneous instruction on the insanity trial made it error to deny the motion for new trial in the insanity proceeding, and because of this antecedent erroneous ruling, the conviction was contrary to law.

The trial judge in the present case had a right to proceed with

the trial after the insanity issue had been decided adversely to the appellant by the special jury, and there is no merit in the assignment of error on the denial of the plea to the arraignment.

■ Error is assigned on the court's ruling, in response to the appellant's demand for a list of the witnesses for the State, that the State is required to furnish the accused with a list of only those witnesses who testified against him before the grand jury.

The record shows that prior to arraignment the appellant filed a demand for a list of witnesses for the State. Counsel for the State, in response to this demand, furnished the appellant's counsel with the name of the witness who appeared before the grand jury, and a list of the witnesses that the State might call on the trial, concluding with the statement, "and others as the case develops and as the defense unfolds." Counsel for the appellant objected to the quoted portion of the response, asserting that the State should furnish the names of all witnesses it knew would be called. Counsel for the State replied that, "depending on what the defendant may use as a defense, it may be necessary for us to seek others, we do not know." The trial judge overruled the motion, stating that the State was required to furnish a list of only those witnesses appearing before the grand jury. It is asserted by the appellant that named witnesses were called on the trial whose names did not appear on the list furnished on his demand.

The Constitution, Art. I, Sec. I, Par. V (*Code Ann.* § 2-105) provides that a person charged with an offense against the laws of this State shall be furnished, on demand, with "a list of the witnesses on whose testimony the charge against him is founded; . . ." Prior to the 1966 amendment (Ga. L. 1966, pp. 430, 431), *Code* § 27-1403 provided: "Every person charged with an offense against the laws shall be furnished, on demand, previously to his arraignment, with . . . a list of the witnesses on whose testimony the charge against him is founded," and this section was held by this court to mean a list of the witnesses who testified before the grand jury. See *Green v. State,* 223 Ga. 611, 612 (157 SE2d 257). The 1966 amendment added the following: "Without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not

appear upon the list of witnesses as furnished to the defendant unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence which the State was not aware of at the time of its furnishing the defendant with a list of the witnesses."

Assuming, but not deciding, that this section as amended requires the State to furnish a list of all witnesses who will be used by the State on the trial within the knowledge of the prosecuting attorney, the response of the State purported to furnish such a list, and the ruling of the judge that the State was required to furnish a list of only those persons appearing before the grand jury against the appellant was not harmful to him.

No question is made by this enumeration of error as to the witnesses called by the State whose names were not on the list furnished to him. If the appellant desired to test their eligibility to testify, he should have invoked a ruling on this at the time their testimony was offered.

■ Error is assigned on the court's refusal to grant the appellant's motion for mistrial. In the closing argument to the jury the solicitor general stated that the jury should consider in their verdict "how they would feel if their wife, their daughter, their child, or some member of the family had been killed and murdered as the Clance family was."

The court recalled the jury and instructed them as follows: "Members of the jury, in the closing statement made by the solicitor general on behalf of the State there were some remarks made in effect that you should consider how you would feel if you or some member of your family or perhaps some friend, something of that nature, someone close to you or some member of your family or some friend, would be a victim of some homicide or a victim of violence of some kind and that you should consider that. It is my duty at this time to instruct you to completely disregard and remove from your mind any reference that might have been made as to how you would feel or any personal reactions or feelings that you may have or might have in the event that you or some member of your family or child, or husband or wife or any one, a friend, or any one close to you

would be directly or indirectly the victim of violence or of a homicide. You will disregard that altogether and decide this case under the instructions that I am going to give you without reference or consideration to any personal feelings you may have, if you would be personally involved as was referred to in the closing remarks. So, please just disregard those remarks and dismiss that entirely from your mind. Let that have no effect whatsoever in your deliberations of this case. You are to try this case before you without any personal reaction as to what has been or what may be concerning you personally insofar as violence to you or any member of your family or friends may be concerned. We would disregard that altogether and not consider it, or not let it affect you in any way in your deliberations in the particular case."

In *Nelson v. State,* 187 Ga. 576, 583 (1 SE2d 641), it was said: ". . . this court has repeatedly held that if the trial judge acts immediately, and in the exercise of his discretion takes such action as in his judgment prevents harm to the accused as a result of such improper statements, a new trial will not be granted unless it is clear that such action failed to eliminate from the consideration of the jury such improper statements. *Brown v. State,* 148 Ga. 264, 266 (96 SE 435); *Johnson v. State,* 150 Ga. 67 (1) (102 SE 439); *Waller v. State,* 164 Ga. 128 (4) (138 SE 67)."

In *Wells v. State,* 194 Ga. 70, 75 (20 SE2d 580), this court held that where the instruction by the court to the jury to disregard the remarks was full, it in effect amounted to a rebuke of counsel.

Conceding, but not deciding, that the remarks of the solicitor general in the present case were improper, we are of the opinion that the court's instruction to the jury amounted in effect to a rebuke of the solicitor general and was sufficient to eliminate such remarks from the consideration of the jury.

■ The special ground of the motion for new trial is based on newly discovered evidence. The affidavit of Larry Goggins is attached to this ground. He averred that between 12:30 and 1 a.m. on October 8, 1967, Walter Breedlove came to his home to buy beer from him, and that Breedlove was drinking, but not drunk, and was able to drive his car.

The murder of Clayton Clance, with which the appellant was charged, occurred sometime prior to 2 a.m. on October 8, 1967, when an intruder broke into the Clance home, attempted to assault Ellabeth Clance, who was 14 years old, menacing her with a pistol, and when she ran toward the bedroom of her parents, calling for their help, the intruder shot her and shot her father, Clayton Clance, killing him. The evidence showed that the wife of the deceased went to a neighbor for help and reported that the intruder, whose voice she had heard, was her nephew, Walter Breedlove. Ellabeth Clance testified that the intruder was the appellant, and she informed the sheriff of this fact when he came to investigate the homicide.

There was evidence for the State that Walter Breedlove went to a dance in another town on the night before the murder with his wife and others, and returned to his home about 1 a.m. the next morning in a drunken condition. His wife testified that he did not thereafter leave his home until he was arrested as a suspect in the murder case at about 3:20 a.m.

There was evidence for the appellant by his wife that Walter Breedlove came to the trailer occupied by them between 1 and 2 a.m. on the morning of October 8, 1967, and returned after 2 a.m. bringing back a pistol he had borrowed from the appellant.

The alleged newly discovered evidence could have no relevancy to the case except for the purpose of impeaching the witness who testified that Walter Breedlove was at home in a drunken condition at the time the murder was committed. Newly discovered evidence which merely impeaches the testimony of witnesses for the State, and which would not likely produce a different result on another trial if admitted, is not sufficient to authorize the grant of a new trial. *Code* § 70-204; *Stuckey v. State,* 176 Ga. 252 (3) (167 SE 519). The trial judge did not abuse his discretion in refusing to grant a new trial on this alleged newly discovered evidence.

■ The contention that the appellant's conviction was contrary to law is based upon the assertion that he should not have been arraigned prior to a final determination of his motion for new trial on the special plea of insanity. We have decided in Division 1 that there is no merit in this contention. The ap-

pellant concedes that otherwise there is no merit in the general grounds of the motion for new trial.

*Judgment affirmed. All the Justices concur, except Felton, J., who dissents.*

FELTON, Justice, dissenting in part. I think that the court erred in refusing to grant the motion of the defendant for a mistrial under the facts of the case. The district attorney made inexcusably inflammatory and prejudicial remarks. There were statements by the court to the jury not to consider such remarks. However, there was no rebuke of counsel who made the damaging remarks and under no interpretation of the judge's statement to the jury could they be construed to be a rebuke. Several recent cases have made similar holdings and I think it is time for us to go back to the true rule and law on the subject and strictly comply with *Code* § 81-1009 and many older decisions which take precedence or the established law of Georgia to the effect that it at least requires a rebuke to counsel to show enough disapproval of the objectionable argument to remove the harm done by such argument. The idea that an instruction by the court removes the objectionable argument from the minds of the jurors is a myth at best. It takes a blast like a rebuke to offset the injury caused by the objectionable argument. *Mitchum v. State,* 11 Ga. 615; *Barfield v. State,* 179 Ga. 293 (175 SE 582); *Ga. Power Co. v. Puckett,* 181 Ga. 386 (182 SE 384); *Brooks v. State,* 183 Ga. 466 (188 SE 711, 108 ALR 752); *Fitzgerald v. State,* 184 Ga. 19 (190 SE 602); *Heard v. State,* 210 Ga. 108 (78 SE2d 38); *Purcell v. Hill,* 220 Ga. 663 (141 SE2d 152); *James v. State,* 223 Ga. 677 (5) (157 SE2d 471).